UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
HAROLD EDWARDS,

                          Plaintiff,                   **REPORT AND**
                                                            **RECOMMENDATION**

        - against -

                                                              08-CV-2199 (FB) (JO)

THE CITY OF NEW YORK, et al.,
                          Defendant.
------------------------------------------------------------X

**JAMES ORENSTEIN, Magistrate Judge:**

      The defendants in this action under 42 U.S.C. § 1983 have filed a letter-motion seeking "an order to enforce the settlement agreement that was reached by the parties on April 10, 2009." Docket Entry ("DE") 21 at 1. Plaintiff Harold Edwards ("Edwards"), who does not wish to be bound by the purported settlement agreement and desires instead to proceed to trial, asserts that his attorney lacked apparent authority to enter into the agreement at issue and argues that the oral agreement upon which the defendants rely is not enforceable. DE 23. For the reasons set forth below, I now recommend that the court deny the defendants' motion.

I.      <u>Background</u>

      Edwards claims that on January 22, 2006, two New York City police officers stopped and searched him without cause, physically assaulted him with no provocation, and falsely charged him with unlawful possession of a weapon and marijuana. *See* DE 10 (Amended Complaint) ¶¶ 10-13. The named defendants – the City of New York and Police Officer Mikal Wright – agreed that Edwards had been arrested on the charges he described, but otherwise denied those assertions in their respective answers. *See* DE 12 (City's answer) ¶¶ 10-13; DE 14 (defendant Wright's answer) ¶¶ 10-13. I held an initial discovery planning conference and issued a case management and scheduling order on October 10, 2008. DE 7 (minute entry); DE 8 (order).

Several weeks after beginning the discovery process, Edwards's counsel asked me to convene a settlement conference. DE 13. Because the application did not specify whether the defendants concurred in the request or opposed it, I denied the motion without prejudice to renewal. Order dated December 4, 2008. Edwards's counsel did not renew the request.

The parties continued the discovery process. On February 26, 2009, apparently concluding that they would complete discovery on schedule and did not need me to resolve any discovery disputes, the parties asked me to cancel a status conference I had previously scheduled for February 27, 2009. DE 16. In making that request on behalf of all parties, Edwards's counsel noted that he had conveyed a settlement demand of $40,000 to the defendants but had not yet received a response. As a result, he against suggested – this time on behalf of all parties – that a settlement conference would be useful. *Id*. I granted the request to cancel the status conference, and scheduled a settlement conference for April 15, 2009. Order dated February 26, 2009.

The next thing I heard from the parties was that they had settled. Specifically, on April 10, 2009, the defendants' counsel wrote "to advise the Court that the parties in this matter have reached a settlement agreement." DE 17. He went on to report that "[a] Stipulation and Order of Settlement and Dismissal will be forwarded to the Court upon execution by the parties." *Id*. Based on that report, I cancelled the settlement conference. Order dated February 13, 2009.

The parties' accord, if it ever really existed, was short lived. On May 1, 2009, Edwards's attorney once again moved to convene a settlement conference. He reported that his client had "refused to sign the papers memorializing settlement and ha[d] outright rejected the agreed upon settlement amount of $19,000.00." DE 18. I scheduled a conference for May 15, 2009, and directed Edwards to appear in person to participate. Order dated May 4, 2009. At that

2

conference, it quickly became apparent that, regardless of any decision he may have made in the past – a matter that is the subject of a factual dispute between Edwards and his counsel – Edwards is now unwilling to settle the case on any terms.[1]  The defendants' counsel asserted that Edwards was bound to the oral settlement agreement that the parties' respective attorneys had reached on April 10, 2009.  In support of that argument, the defendants' counsel stated that he had not intended for the settlement to be contingent on the execution of a signed agreement.  When I asked how often his client the City of New York agrees to bind itself to a settlement agreement in the absence of a writing explicitly specifying the terms (or a plaintiff's oral agreement, on the record in court and under oath, to be bound by such specific terms), he answered that it happens "all the time."

In light of the nature of the dispute, I set a briefing schedule for the instant motion, as well as an expedited schedule for the completion of outstanding pretrial matters in the event the court ruled that there was no enforceable agreement.  *See* DE 19 (minute entry dated May 15, 2009); DE 20 (amended case management and scheduling order).  Consistent with the briefing schedule I had set, the defendants filed the instant letter-motion on May 19, 2009, DE 21, and Edwards responded on May 21, 2009.  DE 23.  At my request, each party's counsel also submitted copies of their communications with one another concerning the purported settlement at issue.  *See* DE 24 (plaintiff's submission); DE 25 (defendants' submission).

---

[1] Although Edwards did allow that he would agree to settle the case for one billion dollars when I pressed him on the limit of his resolve, he later emphatically clarified that he preferred not to settle, and instead wished to proceed to trial on his claims.

II.   Discussion

   A.   Authority To Decide

As a threshold matter, I address whether I have the authority to decide the instant motion, or merely to recommend a decision. The relevant statute provides that, "[n]otwithstanding any provision of law to the contrary[,]" the court may designate a magistrate judge to "hear and determine *any* pretrial matter pending before the court except for" a motion for any of eight explicitly specified forms of relief – none of which is a motion to enforce a settlement agreement. 28 U.S.C. § 636(b)(1)(A) (emphasis added). Although the statute does not make such designation automatic, the local rules of this court provide that the magistrate judge assigned to a civil action is automatically "empowered to act with respect to all non-dispositive pretrial matters unless the assigned district judge orders otherwise." Loc. Civ. R. 72.2(a).

The plain language of the statute would appear to convey to a magistrate judge, upon designation, the authority to "hear and determine" the pretrial motion now before the court. Nevertheless, there are two related reasons that I recommend a decision rather than make it myself. First, the United States Court of Appeals for the Second Circuit has ruled that a magistrate lacks authority to decide some motions filed prior to trial other than the eight specific exceptions listed in the statute itself, if such motions are the "functional equivalent" of a motion to dismiss. *See Williams v. Beemiller, Inc.*, 527 F.3d 259, 266 (2d Cir. 2008) (holding that a pretrial motion for an order to remand a previously removed diversity action to state court pursuant to 28 U.S.C. § 1447(c) is "indistinguishable from a motion to dismiss" and "is not a 'pretrial matter' under § 636(b)(1)(A)"). If a remand order – which, far from disposing of a plaintiff's lawsuit, serves to guarantee that it will continue to be litigated on the merits in the

4

precise forum in which the plaintiff initiated it – can be considered the functional equivalent of dismissal and not a pretrial matter, then a decision on the instant motion must also be deemed to exceed my authority. That is because the necessary result of the order the defendants now request would be the dismissal of all of the plaintiff's claims, without any opportunity for him to resuscitate those claims in any later proceeding in any forum.

Second, because the instant motion is effectively dispositive, it is not automatically referred to me by operation of Local Civil Rule 72.2(a), which automatically refers to a magistrate judge only those pretrial matters that are "non-dispositive." As a result, even if the motion is one that I could properly be designated to hear and determine under § 636(b)(1)(A) – as I believe it would have been prior to the decision in *Williams* – it is plainly not one that actually *has* been referred for such purposes. The matter is now before me as a result of the plaintiff's counsel's decision to raise the issue with me in his letter of May 1, 2009. Accordingly, rather than impose the burden of analyzing the matter in the first instance on the assigned district judge, I assess the merits of the motion, but only for purposes of issuing a recommendation.

B.   Analysis

Edwards opposes the defendants' motion on two grounds. First, he claims that his attorney lacked apparent authority to enter into the purported settlement agreement that the defendants seek to enforce. *See* DE 23 at 2. Second, applying the same standard that the defendants invoke in their motion, Edwards argues that application of the four *Winston* factors compels the conclusion that the purported settlement agreement is unenforceable. *Id*. at 2-4 (citing *Winston v. Mediafare Entm't Corp.*, 777 F.2d 78, 80 (2d Cir. 1985)); *see also* DE 21 at 2-3 (defendants' arguments likewise based on application of the *Winston* factors). Because

5

resolution of the apparent authority issue would require an evidentiary hearing, and because I conclude that Edwards is in any event correct with respect to the question of enforceability, I discuss below only the latter issue.

*Winston* identifies four factors that a court should consider in determining whether parties intend to be bound by a settlement agreement that has not been reduced to writing and executed:

> The court is to consider (1) whether there has been an express reservation of the right not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing.

777 F.2d at 80-81 (citing *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 75-77 (2d Cir. 1984); Restatement (Second) of Contracts § 27 comment c (1981)).  I consider each factor in turn.

      1.    <u>Express Reservation</u>

While neither party expressly reserved the right not to be bound in the absence of a writing, the defendants clearly indicated through their correspondence with the plaintiffs that this was their intent. *See Winston*, 777 F.2d at 81 ("Although neither party expressly reserved the right not to be bound prior to the execution of a document, language in the correspondence does reveal such an intent.").  Immediately upon the conclusion of the oral agreement between the attorneys, the defendants' counsel wrote that "[a]s [he] stated during [their] telephone conversation [earlier that day], defendants will forward the appropriate settlement documents to [Edwards's counsel's] office forthwith."  DE 24-3 at 1 (email message dated April 10, 2009, at 7:02 p.m.).  In the cover letter forwarding those "appropriate settlement documents[,]" the defendants' counsel described the enclosed documents as "paperwork *necessary* to *effectuate* the

6

settlement[.]"  DE 24 at 1 (letter dated April 15, 2009) (emphasis added).  Such language plainly conveys the proposition that no settlement had yet been "effectuate[d]" at that point – meaning that no contract between the parties was yet in existence – and none would be until the "necessary" documents were executed.  *See* Webster's Third New International Dictionary 725 (unabridged, 2002) (definition of "effectuate" cross-referencing the definition of the transitive verb "effect"); *id* at 724 (defining the transitive verb "effect" to mean "to cause to come into being" and "to bring about esp. through successful use of factors contributory to the result").

      Moreover, the documents that the defendants' counsel sent under the cover letter described above included language that plainly indicated an intent not to be bound until such paperwork was complete.  Specifically, the proposed "Stipulation and Order of Settlement and Dismissal" explicitly required Edwards to "execute and deliver to the defendants' attorney all documents necessary to effect this settlement, including ... General Releases ... and an Affidavit Concerning Liens."  DE 24 at 4, ¶ 3.[2]  In addition, the document that the defendants' attorney sent to Edwards's counsel itself explicitly disavowed any prior oral agreement:  "This Stipulation and Order contains all the terms and conditions agreed upon by the parties hereto, and *no oral agreement entered into at any time ... prior to the execution of this Stipulation and Order ... shall be deemed to exist, or to bind the parties ....*"  *Id*. at 5 ¶ 6 (emphasis added).

      Any argument that the defendants did not expressly reserve the right not to be bound in the absence of a writing thus reduces to pure semantics, if not outright sophistry.  Indeed, in arguing that their motion should be granted, the defendants do not even try to argue that *they* did

---

[2] In sending the proposed stipulation, the defendants' counsel also enclosed drafts of those specified documents – *i.e.*, a General Release and an Affidavit Concerning Liens.  *See* DE 24 at 6-7.

7

not expressly reserve the right not to be bound; instead, they argue that *Edwards* made no such reservation of rights.  DE 21 at 2.  Assuming the proposition to be factually accurate, it is immaterial.  The defendants plainly communicated, beginning immediately upon the attorneys' agreement to a settlement amount and continuing consistently thereafter, that there would be no binding agreement unless and until Edwards executed a writing.  Given the defendants' explicit and unequivocal insistence on a signed writing, it is hardly surprising that Edwards's attorney did not also express such a reservation of rights, as it would have accomplished nothing for him to do so.  *See Winston*, 777 F.2d at 80 ("if either party communicates an intent not to be bound until he achieves a fully executed document, no amount of negotiation or oral agreement to specific terms will result in the formation of a binding contract"); *see also In re Artha Management, Inc.*, 91 F.3d 326, 329 (2d Cir. 1996).

        2.      <u>Partial Performance</u>

The parties agree that Edwards has received no settlement payment.  In light of the fact that the payment of $19,000 was the only term requiring performance by any defendant, it is patent that this factor weighs unequivocally in Edwards's favor.  The defendants nevertheless assert that they have provided partial performance by virtue of the fact that they forwarded the proposed written agreement and other documents to Edwards for signature.  DE 21 at 2.  I disagree.

The second *Winston* factor is "whether there has been partial performance *of the contract*;" 777 F.2d at 80 (emphasis added), not whether there has been partial performance of the actions necessary to form the contract.  And yet that is precisely the distinction that the defendants' argument elides.  Indeed, the documents upon which the defendants rely – the

proposed "Stipulation and Order of Settlement and Dismissal" and the cover letter with which it was sent – belie their argument. Those documents repeatedly and explicitly state that the execution by Edwards and his attorney of the stipulation and the accompanying release and affidavit was a precondition to the existence of an agreement. By their very terms, the documents made clear that until Edwards signed them, there was no agreement to perform. As a result, the fact that the defendants' counsel sent the documents to Edwards's attorney cannot possibly constitute the performance of any portion of the defendants' contractual obligations.[3]

### 3. Agreement Upon All Terms

The third *Winston* factor is "whether all of the terms of the alleged contract have been agreed upon[.]" 777 F.2d at 80. Here again, the record flatly contradicts the defendants' argument. The defendants write that the purported agreement came into existence when their counsel accepted the counter-demand that Edwards's counsel made on April 10, 2009. They describe that counter-demand, and therefore the agreement that purportedly resulted, thusly: "By making the counter-demand for settlement, plaintiff was agreeing to have his claims dismissed with prejudice and to release the defendants from liability concerning all of the claims that he brought or could have brought in this action in consideration for $19,000.00." DE 21 at 2. For purposes of analysis, I will entertain the assumption that the counter-demand by Edwards's counsel was so explicit, and that the scope of the release was contemplated in such detail. What I cannot assume, because it is inconsistent with the record, is that the defendants agreed to enter

---

[3] Even less persuasive is the defendants' contention that they somehow accomplished partial performance by alerting me to the purported settlement on April 10, 2009. DE 21 at 2. The defendants simply seize on the fact that they did provide such notification and then pretend that they were obligated to do so by virtue of a contractual term – a position that finds no support in the record.

9

into a contract on precisely those terms.  In particular, the defendants' counsel followed the agreement with respect to the settlement amount with a demand that Edwards comply with additional terms, including a demand that he execute and notarize an "Affidavit Concerning Liens."  DE 24 at 1 (cover letter); *id*. at 4 ¶ 3 (draft stipulation).  No such term was mentioned either in the confirming email message that the defendants' counsel sent to Edwards's counsel immediately following the telephone conversation in which they agreed upon a settlement amount nor in the similar message that the defendants' counsel sent to himself – presumably for purposes of creating a reliable record.  *See* DE 24-3 at 1 (email message from defendants' counsel to Edwards' counsel at 7:02 p.m. on April 10, 2009:  "This will confirm that the parties have agreed to settle this matter for the all-inclusive amount of $19,000."); DE 25 at 6 (email message from defendants' counsel to himself at 7:05 p.m. on April 10, 2009, under the subject heading, "4/10/09 phone call to P's counsel":  "returning his call re: settlement.  He informed me that plaintiff is willing to settle the case for $19k and I accepted.").

4.      Usually Committed To Writing

Perhaps the most troubling aspect of the defendants' motion is the argument that preceded it:  the assertion by their counsel at the conference on May 15, 2009, that the City of New York does not typically insist on reducing its settlement agreements to writing and that in fact it enters into settlements that are exclusively oral "all the time."  The statement seemed improbable when made, and was rendered more so by correspondence demonstrating that the defendants' counsel *immediately* insisted on a written agreement once the parties had orally agreed on the amount to be paid.  *See* DE 24-3 at 1.  The City of New York is a party in a great many cases similar to this one, and most of them are resolved by means of a settlement agreement.  In every such case of

10

which I am aware, the parties have either expressed an intention to reduce their agreement to a writing (or actually submitted such a writing) or have entered into the agreement by going on the record in open court, reciting the specific terms, and having the plaintiff attest to his intention to be bound by those terms. The fact that an Assistant Corporation Counsel would assert that the City of New York eschews such safeguards "all the time" is simply astonishing.

To their credit, the defendants have now abandoned that assertion. Instead, in their letter-motion, they candidly acknowledge that the purported agreement to settle this case is of a kind "that is usually committed to writing[.]" DE 21 at 3 (initial capitals removed); *see also id.* ("settlement agreements of this kind are eventually committed to writing"). The parties therefore now agree that the fourth *Winston* factor favors Edwards.

       5.      Conclusion

Although none of the *Winston* factors is dispositive, each of them favors Edwards under the circumstances of this case. Considering all of them together, it is manifest that the parties never entered into a binding settlement agreement.

I have no doubt that the attorneys who sought to reach a negotiated settlement of this case did so in the best of faith, and that they both sincerely believed that Edwards had agreed to accept a payment of $19,000 in exchange for the dismissal of this lawsuit. I further believe that both attorneys thought that such a disposition of the case was in the best interests of their respective clients, and that it was reasonable for them to think so. But there is no escaping the fact that, at least for the moment, Harold Edwards does not wish to settle this case for $19,000, or for any remotely similar sum. In discussing the matter with me, he was emphatic in his view that he

would rather try to achieve the vindication of his claims in a trial by jury than accept any monetary recovery as a substitute. That is his right.

Whatever may have caused the attorneys to conclude that they had reached an agreement in principle that would satisfy all parties, it is clear that they did not enter into a binding contract that forfeited Edwards's right to a trial. No party has suffered as a result of the misunderstanding, and indeed the defendants are now in a position to vindicate their position that they did no wrong and should not be held liable for any of the claims in the complaint. I therefore conclude that Edwards should not, and cannot under applicable law, be forced to accept a settlement he does not want and that he says he has never authorized or accepted.

III.   Recommendation

For the reasons set forth above, I respectfully recommend that the court deny the defendants' motion for an order to enforce the purported settlement agreement.

IV.   Objections

Any objections to this Report and Recommendation must be filed with the Clerk no later than June 8, 2009. Failure to file objections within this period waives the right to appeal the District Court's order. *See* 28 U.S.C. § 636(b)(1); *See* Fed. R. Civ. P. 72(b)(2); *Beverly v. Walker*, 118 F.3d 900 (2d Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52 (2d Cir. 1996).

**SO ORDERED.**

Dated: Brooklyn, New York
　　　　May 22, 2009

　　　　　　　　　　　　　　　　　　　　　　　　/s/ James Orenstein
　　　　　　　　　　　　　　　　　　　　　　　　JAMES ORENSTEIN
　　　　　　　　　　　　　　　　　　　　　　　　U.S. Magistrate Judge