UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
HAROLD EDWARDS,

              Plaintiffs,

  -against-                          **MEMORANDUM AND ORDER**
                                                   Case No. 08-CV-2199 (FB) (JO)
THE CITY OF NEW YORK, PO MIKAL WRIGHT,
and JOHN DOES 1-10,

              Defendants.
----------------------------------------------------------------x

*Appearances:*                                             *For Defendants The City of New York and*
*For the Plaintiff:*                                 *P.O. Mikal Wright*:
NKEREUWEM UMOH, ESQ.                KARL J. ASHANTI, ESQ.
The Law Office of Uwem Umoh           The City of New York Law Department
255 Livingston Street, 4th Floor            100 Church Street
Brooklyn, New York 11201                  New York, New York 10007

**BLOCK, Senior District Judge:**

        Before the Court is Magistrate Judge James Orenstein's Report and Recommendation dated May 22, 2009 ("the R&R"), recommending that the Court decline to enforce a purported agreement of settlement ("the oral agreement") between plaintiff, Harold Edwards ("Edwards"), and defendants, the City of New York and Mikal Wright (collectively, "the City"). The City timely objected to the R&R. *See* Letter from K. Ashanti, Docket Entry No. 27 (June 8, 2009) (hereafter "the Objection Letter"). Upon *de novo* review, the Court concludes that the oral agreement is not enforceable; therefore, the City's motion to enforce it is denied.

**I**

        On May 30, 2008, Edwards filed a complaint against the City in which he alleged that he was unlawfully arrested in 2006. The parties thereafter engaged in extensive settlement

negotiations, culminating in counsel for the parties agreeing to settle the case for $19,000.00 during a telephone conversation on April 10, 2009. The City's counsel memorialized the conversation in an e-mail of the same date: "This will confirm that the parties have agreed to settle...for the all-inclusive amount of $19,000. . . . [D]efendants will forward the appropriate settlement documents to your office forthwith." *See* E-mail from K. Ashanti to N. Umoh (Apr. 10, 2009, 7:02 PM) ("the April 10th E-mail"). The City's counsel also notified the Court that a settlement had been reached. *See* Letter from K. Ashanti, Docket Entry No. 17 (Apr. 10, 2009) ("the April 10th Letter") (stating that "the parties in this matter have reached a settlement agreement."). Edwards's counsel did not voice any contemporaneous objection to the April 10th Letter, and the record contains no response from him to the April 10th E-mail.

The City later sent various documents to Edwards's counsel, including: (1) a "Stipulation and Order of Settlement and Dismissal"; (2) a "General Release"; and (3) an "Affidavit Concerning Liens." *See* Letter from K. Ashanti to N. Umoh at 1 (Apr. 15, 2009) ("the April 15th Letter"). The City wrote, "As you are aware, the parties reached a settlement agreement on April 10, 2009, to settle this matter for $19,000.00, inclusive of attorneys' fees," and referred to the three enclosed documents as "paperwork necessary to effectuate the settlement." *Id.*

Edwards refused to sign the settlement documents. With counsel, Edwards attended a conference before Magistrate Judge Orenstein on May 15, 2009. Edwards stated that he had not given his counsel authority to enter the oral agreement.

The City thereafter moved to enforce the oral agreement of April 10th. In the R&R now before the Court, Magistrate Judge Orenstein recommended that the City's motion be denied. Applying the Second Circuit's four-factor *Winston* test, set out *infra.*, he found that each of the four factors favored Edwards, and, therefore, Edwards was not bound to the oral agreement because it had not been reduced to writing. *See* R&R at 6-11 (citing *Winston v. Mediafare Entm't Corp.*, 777

2

F.2d 78, 80-81 (2d Cir. 1985)). Having decided that the oral agreement was unenforceable, Magistrate Judge Orenstein declined to make a recommendation on the issue of whether Edwards's counsel had authority to enter into the oral agreement. *See id.* at 5-6.

## II

Where objections to an R&R "attempt to engage the district court in a rehashing of the same arguments set forth in the original petition, reviewing courts should review [an R&R] for clear error." *Edwards v. Fischer*, 414 F.Supp.2d 342, 346-47 (S.D.N.Y. 2006) (internal citation and quotation marks omitted). Objections to R&Rs must be "specific and . . . address only those portions of the proposed findings to which the party objects." *Id.* at 347. District courts conduct *de novo* review of such objections. *Id.*; *see also* 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."). Without specific, focused objections, the entire proceeding before the Magistrate Judge is reduced to a "meaningless dress rehearsal." *See Auerbach v. Amir*, No. 06-CV-4821, 2008 WL 479361, at 1 (E.D.N.Y. Feb. 19, 2008) (internal citation omitted).

The City's Objection Letter contends that all four *Winston* factors favor the City. The focus and tenor of the City's objections to the R&R's *Winston* findings come close to a mere rehash of the argument that played out before the Magistrate Judge; in essence, the City posits that the R&R gets it wrong at every turn, and that the R&R is therefore "incorrect as a matter of law." Objection Letter at 5, 6. Nonetheless, the Court views the Objection Letter as sufficiently focused, though barely, to justify *de novo* review.

## III

As Magistrate Judge Orenstein correctly noted, the Second Circuit has identified four factors that a court should consider in determining whether parties intend to be bound by a settlement agreement that has not been reduced to writing and executed:

(1) Whether there has been an express reservation of the right not to be bound in the absence of a writing;

(2) Whether there has been partial performance of the contract;

(3) Whether all of the terms of the alleged contract have been agreed upon;

(4) Whether the agreement at issue is the type of contract that is usually committed to writing.

*See Winston*, 777 F.2d at 80-81. No single factor is dispositive; each provides significant guidance. *See Ciaramella v. Reader's Digest Ass'n, Inc.*, 131 F.3d 320, 323 (2d Cir. 1997). The "express reservation" factor has "the power to tip the scales slightly more than the other three." *See Walker v. City of New York*, No. 05-CV-0004, 2006 WL 1662702, at *7 (E.D.N.Y. June 15, 2006).

**A.     Express Reservation**

The City contends that no express reservation was made by either party. Objection Letter at 5. The objective intent of the parties at the time of the making of the agreement controls the interpretation of the meaning of the agreement. *See Klos v. Lotnicze*, 133 F.3d 164, 168 (2d Cir. 1997); *see also Hostcentric Tech., Inc. v. Republic Thunderbolt, LLC*, No. 04-CV-1621, 2005 WL 1377853, at *6 (S.D.N.Y. June 9, 2005) ("The test is not [the parties'] after-the-fact professed intent, but the parties' intent as expressed in their words and deeds at the time."). The intention of the parties is a question of fact, to be determined by examination of the totality of the circumstances. *See Ciaramella*, 131 F.3d at 322. The relevant correspondence via e-mail and letter between the parties is in the record; the parties do not dispute the substance of these communications.

During the negotiations leading to the telephonic oral agreement of April 10th, neither party expressly reserved the right not to be bound in the absence of a writing that

4

memorialized their agreement. This does not end the inquiry, however; the Court must also take the parties' written correspondence into account. *See Winston*, 777 F.2d at 81 ("Although neither party expressly reserved the right not to be bound prior to the execution of a document, language in the correspondence does reveal such an intent."). The City's April 15th letter opens by stating "As you are aware, the parties reached a settlement agreement on April 10," seemingly taking the position that a binding agreement had been reached on that date. However, the City referred to the stipulation, affidavit, and general release sent to Edwards as "paperwork necessary to effectuate the settlement[.]" *See* April 15th Letter at 1. This phrase could be interpreted to mean that, unless and until the documents were executed, the City was not bound, and did not intend to be bound, to the oral agreement.[1] *See* R&R at 6-8. If either party communicates the intent not to be bound until the execution of settlement documents, "no amount of negotiation or oral agreement will result in the formation of a binding contract." *Artha Mgmt., Inc. v. Sonia Holdings, Ltd.*, 91 F.3d 326, 329 (2d Cir. 1996).

This interpretation, however, focuses on the phrase "necessary to effectuate" without due consideration for the direct object of the phrase, "the settlement." "Settlement" is preceded by a definite article, "the," not an indefinite article, such as "a."[2] The phrase, taken as a whole, could indicate that the City already considered "the settlement" to be in existence, and that the paperwork was necessary only to carry out its already agreed-upon terms. Moreover, unequivocally notifying the Court that a settlement has been reached, *see* April 10th Letter, also weighs heavily against an

---

[1] Webster's defines "necessary" as "1. Absolutely required: indispensable. 2. Needed to bring about a certain effect or result," etc. *See Webster's II New Riverside University Dictionary* 787 (1988). Synonyms include "essential," "imperative," and "indispensable." *See Webster's Collegiate Thesaurus* 502 (1988). "Effectuate" means "To bring about: effect." *Webster's II* at 418.

[2] "The" refers to "particular persons or things," *Webster's II* at 1199, while "a" refers to "a single, but unspecified, person or thing." *Id.* at 65.

5

express reservation not to be bound absent a writing in the absence of a contemporaneous objection. *See, e.g.*, *Walker*, No. 05-CV-0004, 2006 WL 1662702, at *1, *6 (finding no express reservation where plaintiff sought to invalidate oral agreement after defendant sent letter to court indicating that case had settled); *Hostcentric*, No. 04-CV-1621, 2005 WL 1377853, at *7 (S.D.N.Y. June 9, 2005) (same).

The City's April 10th E-mail, summarizing the telephone negotiations that had just concluded, was also unequivocal. It referred to the documents (which were ultimately sent on April 15th) as "the appropriate settlement documents" and stated plainly that "the parties have agreed to settle this matter for the all-inclusive amount of $19,000." *See* April 10 E-mail. Nowhere in this e-mail, presumably drafted soon after the telephone conversation in which the agreement was reached, does the City say anything that could be considered an express reservation of rights. The response of Edwards's counsel to the April 10th E-mail, if any was made, is not in the record; therefore the Court assumes that he agreed with the City's statement that "the parties have agreed to settle."

On the other hand, the text of the stipulation agreement specifically disavows any previous oral agreements:

> This Stipulation and Order contains all the terms and conditions agreed upon by the parties hereto, and *no oral agreement entered into at any time* nor any written agreement entered into prior to the execution of this Stipulation and Order regarding the subject matter of the instant proceeding *shall be deemed to exist*, or to bind the parties hereto, or to vary the terms and conditions contained herein.

Stipulation at ¶ 6, Docket Entry No. 24-1 (emphases added). Paragraph 6 is a merger clause, and "[t]he presence of such a merger clause is persuasive evidence that the parties did not intend to be bound prior to the execution of a written agreement." *Ciaramella*, 131 F.3d at 324.[3] The City

---

[3] The clause under scrutiny in *Ciaramella* was substantially the same as that presented here: "This Settlement Agreement and General Release constitutes the complete understanding

contends that this language "merely asserts that the Stipulation's terms supersede previous agreements," and that it simply "does not constitute an express reservation not to be bound." Objection Letter at 5. *Ciaramella* counsels to the contrary. Confronted with this conflicting evidence, the Court finds that the first *Winston* factor is effectively neutral. The City's communications of April 10th evince an intent to be bound absent a writing, while its communication of April 15th evinces an intent to be bound only by a writing.

**B.     Partial Performance**

The second *Winston* factor is whether there has been any partial performance of the agreement. *See Winston*, 777 F.2d at 80. Edwards has not received any settlement payment. The City contends that the April 15th Letter, with its enclosures, constituted partial performance. Objection Letter at 6. The Court disagrees. The only meaningful act the City had to perform was to issue a payment to Edwards, which has not occurred. As a result, the second *Winston* factor cuts against enforcing the oral agreement.

**C.     Agreement Upon All Terms**

The third *Winston* factor is whether all of the terms of the agreement have been agreed upon. *See Winston*, 777 F.2d at 80. The City argues that the only negotiated term at issue was the amount of the settlement. Objection Letter at 6. While Edwards refused to execute any of the settlement documents, Edwards did not, at any time, take issue with the terms of the settlement stipulation and its releases. The record contains no discussion of terms beyond the amount the City would give Edwards to dismiss his case. The amount of the settlement is the "single most important term" of a settlement agreement. *See Gildea v. Design Distrib., Inc.*, 378 F.Supp.2d 158,

---

between the parties, may not be changed orally and supersedes any and all prior agreements between the parties . . . No other promises or agreements shall be binding unless in writing and signed by the parties." *Ciaramella*, 131 F.3d at 324.

161 (E.D.N.Y. 2005). It is certainly true that a "Stipulation and Order of Settlement and Dismissal" and a "General Release" are "standard" for a settlement of this type. *See Walker*, No. 05-CV-0004, 2006 WL 1662702, at *8.

As noted by Magistrate Judge Orenstein, however, the City's requirement that Edwards execute an "Affidavit Concerning Liens" is not within the ambit of the oral agreement. *See* R&R at 10. The purpose of the Affidavit appears to be for the City to assess whether Edwards has any preexisting debts to certain City and New York State entities; presumably the City sought to ensure that the $19,000 settlement payment was first applied against any such debts.

The City's Law Department appears to require that plaintiffs against the City execute affidavits of this type for settlement purposes as a matter of policy. *See, e.g.*, *Silas v. City of New York*, 536 F.Supp.2d 353, 357 (S.D.N.Y. 2008) (excessive force case; City sent "settlement paperwork, including . . . an Affidavit of No Liens [and] an Affidavit Concerning Liens"); *Wesley v. Corr. Officer Badge No. 9417*, No. 05-CV-5912, 2008 WL 41129, at *1 (S.D.N.Y. Jan. 2, 2008) (excessive force case; City sent "settlement paperwork including . . . an Affidavit of No Liens/Concerning Liens"); *Abd'Al-Malik v. City of New York*, No. 02-CV-1367, 2007 WL 1467420, at *2 (City settlement offer "expressly conditioned upon receipt [of] an "Affidavit of No Liens/Affidavit Concerning Liens") (internal quotation marks omitted); *Foster v. City of New York*, No. 96-CV-9271, 2000 WL 145927, at * 1 (disability discrimination case; City prepared a stipulation of settlement, a general release, and an "Affidavit of No Liens"). The City further argues that Edwards's counsel, having litigated cases of this nature with the City before, is familiar with the City's standard settlement documents. Objection Letter at 6. Edwards does not argue otherwise.

Nonetheless, simply because the City typically insists upon an affidavit concerning liens does not mean that the execution of such an affidavit was within the ambit of the oral

agreement reached on April 10. Unlike the Stipulation of Dismissal and the General Release, the Affidavit affords the City a benefit separate and apart from a resolution of Edwards's claims. Once executed, it would enable the City to either: (1) recover debts wholly unconnected to the instant case; or (2) protect itself against claims to the settlement amount by creditors wholly unconnected to the instant case. Therefore, the Court finds that the oral agreement of April 10 did not include the requirement that Edwards execute the Affidavit. As a result, the third *Winston* factor cuts against enforcement of the oral agreement.

**D. Usually Committed to Writing**

The final *Winston* factor is whether the oral agreement "is the type of contract that [is] usually put in writing." *Winston*, 777 F.2d at 83. The parties agree that a settlement of this kind is usually memorialized in a writing. The City's objection to the R&R, however, argues that its demand to memorialize the agreement did not preclude the formation of a binding agreement. Objection Letter at 6-7. The City thus concedes that these agreements are typically reduced to writing, but contends that the usual writing has no legal effect. The City's insistence on the execution of these documents, by a date certain, cuts against that understanding. *See* April 15th Letter at 1 ("[P]lease return the executed documents . . . no later than May 4, 2009."). Therefore the fourth *Winston* factor cuts against enforcing the oral agreement.

**IV**

Three of the four *Winston* factors favor Edwards, and the fourth is in equipoise. The Court, therefore, concludes that the oral agreement is not enforceable.

There is no need for the Court to reach the question of whether Edwards's counsel had actual or apparent authority to enter the oral agreement. Having concluded that no binding agreement existed, the authority of Edwards's counsel to enter something that did not exist is irrelevant. *See also Cruz v. Onesource Facility Servs., Inc.*, No. 03-CV-8233, 2005 WL 2923517,

9

at *3 (S.D.N.Y. Nov. 4, 2005) ("[The] argument that [counsel] had apparent authority to accept a settlement . . . [is] unavailing" since plaintiff had made an express reservation not to be bound until an agreement was reduced to writing).[4]

       The City's motion is denied.

**SO ORDERED.**

                                                      _____
                                                    FREDERIC BLOCK
                                                   Senior United States District Judge

Brooklyn, New York
August 21, 2009

---

[4] The City disputes Edwards's position that his counsel did not have the authority to settle the case. *See* Objection Letter at 3-4. Edwards's counsel also disputes Edwards's position. *See* Letter from N. Umoh, Docket Entry No. 23, at 1 n.1 (May 20, 2009) ("The statements in this opposition reflect plaintiff's position and not that of his attorney, who asserts that plaintiff gave him authority to settle this matter for $19,000.00."). In light of the Court's conclusion that the oral agreement is not enforceable, both disputes are not relevant.